UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

SHARI J. VANDER LINDEN,

      Plaintiff,

   v.                                                Case No. 09-C-534

MICHAEL J. ASTRUE, Commissioner of
Social Security

      Defendant.

---

## DECISION AND ORDER

---

Plaintiff Shari J. Vander Linden filed this action seeking judicial review of the final decision of the Commissioner of the Social Security Administration denying her applications for Disability Insurance Benefits ("DIB") under Title II and Supplementary Security Income ("SSI") under Title XVI of the Social Security Act ("Act"). 42 U.S.C. § 405(g). Plaintiff alleged in her applications that she was disabled due to deep vein thrombosis in her left leg, depression, anxiety, and poor cognitive functioning. (Tr. 99-106.) After the Agency denied her applications initially and upon reconsideration, Plaintiff requested a hearing.

On December 1, 2008, Administrative Law Judge ("ALJ") Joel Martinez conducted a hearing at which plaintiff, represented by counsel, appeared and testified. Based upon her testimony, the testimony of a vocational expert, and the medical evidence presented, the ALJ concluded in a December 24, 2008 decision that plaintiff did not have an impairment or combination of impairments qualifying her for benefits, and that she retained the residual functional capacity ("RFC") to perform medium work of moderate complexity. Finding that her past relevant

work fell within these restrictions, the ALJ concluded plaintiff was not disabled. The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied review.

Plaintiff claims the Commissioner's decision is not supported by substantial evidence in the record and that the ALJ committed several errors in reaching his decision. She first contends that the ALJ's omission of her reduced cognitive functioning in determining whether she had a severe impairment at step two of the sequential analysis is not supported by substantial evidence. Next, plaintiff argues that the ALJ erroneously failed to apply or mention Listing 12.05C at step three in considering whether she had an impairment or combination of impairments that meets or medically equals those listed in the regulations. Finally, plaintiff alleges that the ALJ improperly failed to properly assess her RFC because he failed to consider the full range of her mental impairments.

Based upon its review of the entire record in this matter, the court now concludes that the ALJ failed to (1) consider whether plaintiff's reduced cognitive functioning constituted a severe impairment; (2) apply or consider Listing 12.05; and (3) take plaintiff's reduced cognitive functioning into account in determining her RFC. Thus, the conclusion that she was not disabled cannot stand. The decision of the ALJ will therefore be reversed and remanded pursuant to 42 U.S.C. § 405(g) (sentence four).

## BACKGROUND

At the time of the hearing, Plaintiff was forty-one years old. (Tr. 318.) She had formerly worked as a certified nurse's assistant ("CNA"), an assembler and a machine operator. (Tr. 321-23.) She left her last job as a CNA after developing deep vein thrombosis in her left leg, and experiencing bouts with anxiety and depression. (Tr. 323.)

2

Plaintiff applied for DIB on February 7, 2006, alleging disability due to physical and mental problems beginning on December 31, 2002. (Tr. 62-64.) She applied for SSI on February 16, 2006. (Tr. 67-69.) The Agency denied her applications initially (Tr. 30-31, 50-53) and upon reconsideration (Tr. 28-29, 44-47). On August 5, 2006, plaintiff requested a hearing before an ALJ. (Tr. 38.) On December 1, 2008, ALJ Joel Martinez conducted a hearing at which plaintiff and Jane Haile, a vocational expert, testified. (Tr. 315-43.) Plaintiff was represented by counsel at the hearing.

Plaintiff completed the eighth grade and completed a month of classes to become a CNA. (Tr. 318-19, 334.) Vander Linden had been in special education until she left school after completing the eighth grade. (Tr. 334.) She stopped working at a nursing home after developing a blood clot in her leg. (Tr. 323.) Plaintiff has had a number of jobs–she estimates around 30–but has not been able to hold a job for any great length of time, as her longest term of employment was a year. (Tr. 335.) While she claims she has had difficulty holding a job because of depression and anxiety (Tr. 323, 335), she has been fired for getting into arguments and missing work. (Tr. 335-36.) Vander Linden testified at the hearing that a number of her jobs last less than a month or two. (Tr. 335.)

Plaintiff testified that she has two teenage children at home and that she cared for her youngest child, who was 15 years old. (Tr. 332.) Vander Linden stated that she would "wash, cook, clean" during the day, but that she was not always active at home as she had some "bad days" with depression. (Tr. 332-33.) She conceded that although she has been prescribed medications for depression and anxiety, she was not always taken her medication as directed by her doctor. (Tr. 334.)

3

At the time of the hearing, plaintiff testified that she suffered from panic attacks, bouts of crying, trouble sleeping, difficulty remembering things, numbness and swelling in her feet and legs after sitting or standing for about half an hour, and back pain when lifting objects. She also reported numbness on the right side of her body. Further facts pertinent to the case are set forth below where relevant.

**STANDARD OF REVIEW**

A district court's review of a social security appeal is limited to determining whether the ALJ's decision is supported by substantial evidence and based on the proper legal criteria. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004) (citation omitted). The court reviews the entire record but does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). However, "[i]n coming to his decision . . . the ALJ must confront evidence that does not support his conclusion and explain why it was rejected." *Kasarsky v. Barnhart*, 335 F.3d 539, 543 (7th Cir. 2003). The ALJ's findings of fact, if supported by substantial evidence, are conclusive. *Scheck*, 357 F.3d at 699 (citation omitted). Substantial evidence is such relevant evidence as a reasonable person could accept as adequate to support a conclusion. *Kepple v. Massanari*, 268 F.3d 513, 516 (7th Cir. 2001) (citation omitted). If the ALJ commits an error of law, however, reversal is required without regard to the volume of evidence in support of the factual findings. *Binion on Behalf of Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997) (citation omitted). The ALJ commits such an error if he fails to comply with the

4

Commissioner's regulations and rulings. *Brown v. Barnhart*, 298 F. Supp. 2d 773, 779 (E.D. Wis. 2003); *see also Prince v. Sullivan*, 933 F.2d 598, 602 (7th Cir. 1991).

The ALJ's decision must also demonstrate the path of his reasoning, and the evidence must lead logically to his conclusion. *Rohan v. Chater*, 98 F.3d 966, 971 (7th Cir. 1996) (citations omitted). While the ALJ need not discuss every piece of evidence in the record, he must provide at least a glimpse into his reasoning. *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). Even if enough evidence exists in the record to support the decision, the court cannot uphold it if the reasons given by the ALJ do not build an accurate and logical bridge from the evidence to the result. *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996) (citations omitted). While it is true that the ALJ's decision must reflect a fair assessment of evidence and be free of fatal gaps and contradictions, it is also true that a reviewing court must "give the opinion a commonsensical reading rather than nitpick[] at it." *Johnson v. Apfel*, 189 F.3d 561, 564 (7th Cir. 1999).

## ANALYSIS

**I. Cognitive Functioning at Step Two**

In the course of his sequential evaluation under 20 C.F.R. § 404.1520(a)(4),[1] at step two the ALJ determined that plaintiff has the following severe impairments: deep vein thrombosis of her left leg and depression. (Tr. 16.) Plaintiff contends that the ALJ should have also discussed her IQ

---

[1] Under this test, the ALJ considers sequentially 1) whether the claimant is currently employed; 2) whether the claimant has a severe impairment; 3) whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. § 404, Subpt. P, App. 1; 4) whether the claimant can perform her past work; and 5) whether the claimant is capable of performing work in the national economy. *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995)

5

scores contained in the record, which she claims show she has diminished cognitive capacities.[2] Because of her scores, plaintiff asserts that the ALJ's omission of any finding of cognitive deficiency at step two is not supported by substantial evidence.

Before I address plaintiff's arguments, I turn to the threshold issue of whether the ALJ's decision at step two–a decision which was favorable to plaintiff but not as broad as she would like–is subject to remand. Some courts hold that an error at step two does not warrant remand as long as the ALJ proceeded beyond step two, reasoning that claimants in such cases suffer no prejudice. *See., e.g., Gordon v. Astrue*, No. 4:07-cv-00042, 2007 WL 4150328, at *7 (S.D. Ind., Nov. 13, 2007) ("As long as the ALJ proceeds beyond step two . . . no reversible error could result solely from his failure to label a single impairment as 'severe.' The ALJ's classification of an impairment as 'severe' or 'not severe' is largely irrelevant past step two. What matters is that the ALJ considers the impact of all of the claimant's impairments-'severe' and 'not severe'-on her ability to work."); *Cochrane v. Astrue*, No. 08 C 2906, 2009 WL 5173496, at *7 (N.D. Ill. Dec. 30, 2009) (indicating no error possible as long as the ALJ proceeds beyond step two). Other courts have rejected this approach and held that error at step two can only be deemed harmless if the ALJ sufficiently accounted for the severe impairment in the RFC analysis at step four. *Ramos v. Astrue*, --- F. Supp. 2d ----, 2009 WL 4555567, at *13 (E.D. Wis. Nov. 27, 2009). As Judge Adelman has explained,

> . . . if the ALJ fulfills this obligation at step four, any error at step two will likely be harmless. *See Keys v. Barnhart*, 347 F.3d 990, 994-95 (7th Cir. 2003) (applying harmless error doctrine in social security case); *cf.* [*Samuel v. Barnhart*, 295 F. Supp. 2d 926, 953-54 (E.D. Wis. 2003)] (reversing where ALJ erred in finding mental impairment not severe at step two and omitted any mental limitations from

---

[2]Plaintiff's IQ scores according to WAIS-III testing were a Verbal IQ of 70, a Performance IQ of 74 and a Full Scale IQ of 69. (Tr. 239.)

6

RFC at step four). Thus, the question becomes whether the ALJ's error at step two affected the RFC determination and thus the outcome of the case.

*Masch v. Barnhart*, 406 F. Supp. 2d 1038, 1054 (E.D. Wis. 2005). Because the latter approach sensibly recognizes that a severe impairment not identified at step two could prejudice the claimant if not properly accounted for in setting the RFC, I decline to hold that the mere fact that the ALJ advanced beyond step two precludes a finding of error requiring remand.

I now turn to the evidence before the ALJ to determine whether it supports his findings at step two. On December 15, 2005, plaintiff's primary care physician, Dr. Andrea Schimke, M.D., referred her for neuropsychological testing to "determine if her difficulties with focus, concentration, and managing daily life is related to attention-deficit disorder or any other neurological or psychiatric disorder that would be amenable to treatment." (Tr. 271.) On February 28 and March 14 of 2006, Julie Hoida Bobholz, Ph.D., a clinical neuropsychologist, evaluated plaintiff by interview, reviewing her records and administering a battery of neuropsychological measures. (Tr. 236-38.) Based on the results of the WAIS-III, which measures general intellectual skills, Dr. Bobholz noted that plaintiff showed borderline performances on tasks of verbal comprehension skills, perceptual organization skills, working memory, and processing speed. (Tr. 237.) Dr. Bobholz's diagnostic impression was of poor cognitive functions with history also suggestive of ADHD and learning disability. (Tr. 237.) She also noted that plaintiff's "low cognitive functioning, poor learning, and longstanding attention problems" could severely limit plaintiff's ability to succeed in employment. (Tr. 238.)

Dr. Bobholz also completed a Mental Impairment Questionnaire for plaintiff on August 6, 2006, in which she identified diagnoses of ADHD, anxiety, depression, and learning disability. (Tr.

7

207.) Dr. Bobholz indicated that Vander Linden had a low IQ or reduced intellectual functioning, and she reported the full scale IQ score of 69 and the performance IQ score of 70. (Tr. 210.)

Plaintiff saw a counselor, Melanie Creger, M.A., on December 28, 2005, and again on March 15, 2006. (Tr. 247, 248.) Like Dr. Bobholz, Creger completed a Mental Impairment Questionnaire for plaintiff, in which she noted plaintiff's cognitive and memory deficits, disoriented mental state, and difficulty following long term, complex directions. (Tr. 202.) Among plaintiff's signs and symptoms that Creger identified were poverty of speech, difficulty thinking or concentrating, perceptual or thinking disturbances, illogical thinking, easy distractibility, and memory impairment. (Tr. 203.) Creger further indicated that Vander Linden had either a low IQ or reduced intellectual functioning, and referenced the IQ testing results. (Tr. 205.)

Plaintiff again went to see Dr. Bobholz for neuropsychological testing on January 28, 2008. (Tr. 232-34.) Dr. Bobholz discussed the WAIS-III test results, which were similar to plaintiff's last test, but the results were not submitted along with Dr. Bobholz's evaluation. Dr. Bobholz's impressions were again poor cognitive functions, history of ADHD and learning disability, along with severe depression and anxiety. (Tr. 233.)

The state agency examiner that considered Vander Linen's application during the administrative process noted her "reportedly borderline intellectual functioning" and concluded that it was "not consistent with possible MR." (Tr. 75.) The state agency psychologist evaluated Vander Linden's application under Listing 12.05, mental retardation, but concluded that it was not met. (Tr. 218.)

In concluding at step two that plaintiff had the severe impairments of deep vein thrombosis of her left leg and depression, the ALJ provided a one-sentence discussion regarding plaintiff's "mild limitations in activities of daily living, a mild limitation in social functioning, a moderate

8

limitation in maintaining concentration, persistence, or pace, and no episodes of decompensation." (Tr. 16.) What is missing from the ALJ's discussion at step two of Vander Linden's impairments is any mention of IQ scores and the impressions and notes of Dr. Bobholz and Ms. Creger. Although the ALJ did not specifically provide a rationale for not including this information at step two, he did note in his RFC analysis that he found reason to discount Dr. Bobholz's opinion on the basis that she had limited contact with plaintiff, and afforded Ms. Creger's opinion less weight given the record evidence and the fact she was not a psychologist or a doctor. Had the ALJ also articulated why he did not believe plaintiff's IQ test results showed she suffered a mental impairment, it would make no difference that the matter was not discussed at step two. Because it was not discussed at either step two or step four, however, I conclude that the better course is to order a remand for reconsideration of the issue, especially in light of the fact that I have concluded that remand is warranted on step three.

**II. ALJ's Failure to Consider Mental Retardation Listing at Step 3**

Similarly, plaintiff asserts that the ALJ erred by failing to consider the applicability of Listing 12.05 (mental retardation) at step three of the sequential analysis. If a claimant is found at step three to have an impairment that meets or equals a listed impairment, the claimant is presumptively disabled and eligible for benefits. 20 C.F.R. § 404.1520(d); 20 C.F.R. Part 404, Subpt. P, App. 1. The ALJ concluded that plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpt P, App. 1. (Tr. 16.) Vander Linden maintains that because two of her IQ scores were within the range of 60 through 70, and there was other evidence of work-limiting impairment, the ALJ was

9

required to provide a discussion on the applicability of Listing 12.05C. Listing 12.05 provides, in pertinent part:

> 12.05 *Mental retardation*: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> * * *
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;

20 C.F.R. Pt. 404, Subpt. B, App. 1, Listing 12.05 (2009); *see Brown v. Sec'y of Health and Human Servs.*, 948 F.2d 268, 270 (6th Cir. 1991) ("The Secretary, in promulgating Listing 12.05(C), expressly singled out individuals with Mild Mental Retardation for special treatment in determining entitlements to disability benefits.").

The Commissioner directs the Court to *Strunk v. Heckler*, in which the Seventh Circuit observed that it was unaware of any authority requiring a finding of mental retardation based on an IQ score alone. 732 F.2d 1357, 1360 (7th Cir. 1984). *Strunk* is distinguishable from this case, however, as the ALJ's decision in *Strunk* actually included a determination that Listing 12.05 was inapplicable. *Id*. The Commissioner's reliance on *Maggard v. Apfel*, 167 F.3d 376 (7th Cir. 1999), is similarly misplaced. The Seventh Circuit found reasonable the ALJ's conclusion that a claimant's IQ score of 68 was invalid, based in part on a diagnosis of borderline intellectual functioning rather than mental retardation. 167 F.3d at 380. But this was just one of several factors the ALJ in

10

*Maggard* considered in concluding the IQ score was invalid. In any event, the ALJ in *Maggard* provided a full discussion of the claimant's IQ test, unlike the ALJ in this case.

The Commissioner provides a number of questionable reasons why Vander Linden's IQ scores do not warrant finding that Listing 12.05C applies, such as the fact that Dr. Bobholz herself did not include the raw numerical scores in her narrative report, the paucity of evidence regarding Vander Linden's deficits in adaptive functioning prior to age 22 (apparently because she was enrolled in special education courses), and the fact none of Vander Linden's medical sources labeled her condition as "mental retardation." But even if the proffered reasons were sound, the ALJ did not provide them in his decision, and they cannot be reasonably inferred from it. This Court is thus left with the Commissioner's post hoc rationalizations, which causes a problem given that courts reviewing an ALJ's decision may not affirm the decision on alternative bases permitted by the record. *See SEC v. Chenery Corp.*, 318 U.S. 80, 93-95 (1943); *Steele v. Barnhart*, 290 F.3d, 936, 941 (7th Cir. 2002). "That is why the ALJ (not the Commissioner's lawyers) must 'build an accurate and logical bridge from the evidence to her conclusion.'" *Steele*, 290 F.3d at 941 (quoting *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001)).

While an ALJ's failure to explicitly refer to the relevant listing alone does not necessitate reversal and remand, "where an ALJ omits reference to the applicable listing and provides nothing more than a superficial analysis, reversal and remand is required." *Rice v. Barnhart*, 384 F.3d 363, 369-70 (7th Cir. 2004) (citations omitted); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) ("In considering whether a claimant's condition meets or equals a listed impairment, an ALJ must discuss the listing by name and offer more than a perfunctory analysis of the listing.") (citations omitted); *see also Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006) (ALJ's failure to mention

the specific listings he is considering, if coupled with perfunctory analysis, may require a remand) (citations omitted).

I conclude that the ALJ failed to reference the applicable listing and provided nothing more than a perfunctory analysis at step three. Without explanation, the ALJ did not explicitly consider the applicability of Listing 12.05, a listing that the state agency psychologist had evaluated plaintiff under earlier in the administrative process (although not in plaintiff's favor). (Tr. 218.) The ALJ's decision does not permit the inference that he recognized the applicability of Listing 12.05. Because this does not allow meaningful judicial review of the agency's action, I will order remand and a rehearing on the issue of whether or not Listing 12.05 applies.

**III. Residual Functional Capacity**

The ALJ found that Plaintiff had the RFC to perform medium work of simple to moderate complexity. (Tr. 17.) Plaintiff contends that the ALJ's RFC determination was not based on substantial evidence, as it disregarded her IQ scores and the opinions of the mental health professionals in the record. She argues that because the ALJ failed to consider information regarding plaintiff's cognitive abilities in crafting his hypothetical questions for the vocational expert, the vocational expert's testimony is unhelpful.

The ALJ noted that Vander Linden's medically determinable impairments included deep vein thrombosis, anxiety and depression. (Tr. 17.) The discussion the ALJ provided at step four is not lacking in detail regarding Vander Linden's claimed deep vein thrombosis, anxiety and depression. What is missing is more than a fleeting reference to the evidence relating to plaintiff's cognitive impairment. The ALJ observed:

> Julie Bobholz, Ph.D., conducted a psychological evaluation in February and March 2006 (Exhibit 1F/66-70). Dr. Bobholz diagnosed the claimant with poor cognitive

12

> functions with a history suggestive of possible Attention Deficit Hyperactivity
> Disorder and learning disability, depression, anxiety and sleep disturbance.

(Tr. 18.) The ALJ later discounted Dr. Bobholz's opinion given her limited contact with Vander Linden compared to that of Dr. Schimke, her primary care provider, who in September 2007 opined that it was inappropriate for Vander Linden to seek disability benefits given her noncompliance with trying or taking medication. The ALJ also noted that a staff member at New Wellness Associates, where Vander Linden had gone for counseling, observed that secondary gain issues were present.

It is for the ALJ to determine and provide an explanation of what mental and physical conditions are established in the evidence, and what limitations those conditions impose. But the ALJ must do so upon considering all the evidence that might suggest limitations on Vander Linden's mental capabilities. Here, while the ALJ explained why he rejected the opinions of Dr. Bobholz and Vander Linden's therapist, he offered no explanation for why her IQ scores were not worthy of consideration. Because I conclude that the ALJ gave short shrift to the record evidence suggesting that plaintiff was cognitively impaired, I will remand this matter for a rehearing on the issue.

## CONCLUSION

The ALJ's conclusion at step two that the only severe impairments plaintiff suffered were deep vein thrombosis and depression is not supported by substantial evidence, as the ALJ did not provide a discussion of whether the plaintiff's IQ scores, combined with the other evidence of reduced cognitive functioning in the record, warranted finding a severe mental impairment at step two. Most significantly, the ALJ did not even mention Listing 12.05 at step three. While plaintiff was never diagnosed as being mentally retarded, her IQ scores and the other evidence of her

13

Case 1:09-cv-00534-WCG    Filed 04/07/10    Page 13 of 14    Document 16

cognitive and other impairments required the ALJ to articulate why Listing 12.05C did not apply. Finally, the ALJ's analysis at step four in setting the RFC also did not adequately take into account plaintiff's mental limitations. Accordingly, the Commissioner's decision is reversed and the case remanded pursuant to 42 U.S.C. § 405(g) (sentence four), for further proceedings consistent with this decision.

**SO ORDERED** this 6th day of April, 2010.

                               s/ William C. Griesbach
                               William C. Griesbach
                               United States District Judge